**SIGNED this 28th day of January, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| TIMOTHY D. LOVELACE & STARLA K. LOVELACE | 09-53492-C |
| *DEBTORS* | CHAPTER 7 |
| TIMOTHY D. LOVELACE & STARLA K. LOVELACE | |
| *PLAINTIFFS* | |
| v. | ADV. NO. 10-5009-C |
| USAA FEDERAL SAVINGS BANK | |
| *DEFENDANT* | |

**MEMORANDUM DECISION GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have sued under the Declaratory Judgment Action for a determination that the lien of USAA Federal Savings Bank on their home is invalid, based on provisions of the Texas Constitution relating to home equity loans. Plaintiff has filed a motion for summary judgment, contending that there is no disputed issue of material fact in the case, and that the matter can be

adjudicated as a matter of law. Defendant has responded to the motion, agreeing that there are no fact issues and that the matter can be decided as a matter of law.

The underlying undisputed facts, then, can be briefly summarized as follows:

Sometime in May, 1999, the Plaintiffs acquired certain real property and improvements located at 215 River Bluff, Castroville, Texas.[1] The Property serves as the home for the Debtors and their two children. Debtors have owned and occupied the Property as their homestead continuously since they acquired it. At the time they purchased the Property in May, 1999, the Debtors executed a Note for $163,000.00 and Deed of Trust in favor of PHH Mortgage Services Corporation. Four years later, on April 19, 2003, the Debtors executed a new Note in the amount of $164,000.00 and Homestead Lien Contract and Deed of Trust, all in favor of Bank of America, N.A. This loan was a Texas Home Equity loan, being the type of credit defined by Section 50(a)(6), Article XVI of the Texas Constitution. It paid off the PHH Note, and advanced additional monies as a home equity loan. PHH released its lien against the Property as part of this transaction.

On October 15, 2004, the Debtors refinanced their home equity loan with Bank of America, N.A., in another home equity loan transaction. They cashed out some of their equity and obtained funds for their own personal use. The Debtors executed a new Note in the amount of $184,000.00 payable to Bank of America, along with another Homestead Lien Contract and Deed of Trust in favor of Bank of America. This loan to qualified as a Texas Home Equity loan under Section 50(A)(6), Article XVI of the Texas Constitution.

Approximately two years later, Timothy Lovelace contacted USAA by telephone concerning

---

[1] The property is legally described as Lot 17, Block 5, River Bluff Subdivision, City of Castroville, Medina County, Texas, according to re-subdivision plat thereof recorded in Volume 7, Pages 109-113, Medina County Plat Records (hereinafter referred to as "the Property").

a banking matter. During the course of the conversation, Mr. Lovelace was advised by a USAA representative that he qualified for a home equity loan. Thereafter, the Plaintiffs filled out an application and applied for a home equity loan. On October 17, 2006, the Plaintiffs executed (through a power of attorney) a Note in the amount of $57,799.00 in favor of USAA, along with a Texas Home Equity Deed of Trust. This loan was also a Texas Home Equity loan, being the type of credit defined by Section 50(a)(6), Article XVI of the Texas Constitution. All of the funds advanced by USAA in connection with this transaction were placed in the Plaintiffs' checking account and used for personal purposes such as paying down credit card debt or personal loans. The USAA FSB Texas Home Equity Deed of Trust was executed and recorded in the deed records for Medina County on October 27, 2006, approximately two years after the Bank of America, N.A., Texas Home Equity Deed of Trust, which was recorded October 25, 2004.

On September 9, 2009, the Plaintiffs filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. The deadline to object to the dischargeability of a debt or the discharge of the debtors was December 14, 2009. No such objection was filed. On April 29, 2010, a Discharge was entered in the Plaintiffs' bankruptcy case. In connection with the filing of their bankruptcy case, the Plaintiffs Debtors had filed Schedules. On Schedules A & C, they claimed the Property as exempt as their homestead under Texas law. No objection was filed within the time provided by law.

## Legal Analysis

Summary judgment is appropriate when there is no genuine issue of material fact and the matter may be resolved as a matter of law. *See Scott v. Harris*, 550 US. 372, 127 S.Ct. 1769, 1776 (2007). When summary judgment evidence is presented by a plaintiff that establishes all elements of its claim as a matter of law, and that evidence is not controverted, then summary judgment is

appropriately entered in favor of the plaintiff, if the law otherwise so provides. *See San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996); *Flath v. Garrison Public School District*, 82 F.3d 244, 246 (8th Cir. 1996). Here, there is no dispute regarding the facts. There is only a dispute regarding the proper interpretation of the applicable law.

### The Parties' Arguments

The Plaintiffs maintain that, under the Texas Constitution, there can be only one home equity loan at a time on a borrower's homestead. *See* TEX. CONST., ART. XIV, sec. 50(a)(6)(K). They get there by looking at the language of that section, which provides that the proposed home equity loan must be "the *only* debt secured by the homestead at the time of the extension of credit ... unless the other debt was made for a purpose described by Subsections (a)(1) - (a)(5) or Subsection (a)(8)" of section 50. *See id.* (emphasis added). The referenced exceptions are summarized as follows:

a. Purchase money mortgage (subsection (a)(1));

b. Ad valorem taxes (subsection (a)(2));

c. A court ordered partition (or owelty of partition by agreement of the co-owners) (subsection (a)(3));

d. A refinance of a lien against a homestead (including the refinancing of a federal tax lien) (subsection (a)(4));

e. Home improvement lien (subsection (a)(5)); and

f. The conversion or refinancing of a personal property lien secured by a manufactured home to a lien on the real property (including the refinancing of the purchase price of the manufactured home, the cost of its installation, and the refinancing of the purchase price of the real estate) (subsection (a)(8)).

The Plaintiffs say that the prior home equity loan held by Bank of America, and recorded in the deed records of Medina County is not a loan that falls into any of the exceptions listed above. To the contrary, it is another pre-existing home equity loan on the Plaintiffs' homestead, and as a result, USAA could not obtain a valid Texas Home Equity lien on the same homestead. Plaintiffs add that their interpretation of the Texas Constitution is supported by the Texas Administrative Code, which states at Rule 153.10 that "an owner may have only one equity loan at a time, regardless of the aggregate total outstanding debt against the homestead."[2] The Plaintiffs add that the Office of the Consumer Credit Commissioner for the State of Texas has adopted this interpretation in its consumer information brochure entitled "Home Equity Loans in Texas: Frequently Asked Questions."

USAA counters that, in fact, the Bank of America lien fits within one of the exceptions. It points out that the 2004 Bank of America lien (and accompanying note) was the refinancing of a lien against the homestead, albeit the refinancing of a home equity lien. USAA adds that the underlying refinanced home equity loan was itself a refinancing of the original purchase money mortgage. As the only other lien against the property was a lien for the refinancing of a debt, says USAA, the lien fits one of the exceptions and so does not count to disqualify USAA's home equity lien from being valid.

Neither party cites any legal authorities construing the relevant provision at issue in this case because, insofar as this court's research has shown, there are no cases construing the provision. The matter appears to be one of first impression for the courts (both state and federal). In a reply brief, however, the plaintiff helpfully addresses the essential contention of USAA, with a policy and

---

[2] The rule has been in place since January 8, 2004, well prior to the extension of credit at issue here.

interpretation argument. Says the plaintiff, if USAA's argument were accepted, then it would be possible for a debtor to have more than one home equity loan on her house at the same time, in direct derogation of the Texas Constitution's express proviso to the contrary. Section 50(g) of Article XVI of the Texas Constitution provides that

> An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument:
> . . .
> "(K)   ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME ..."

TEX. CONST., Art. XVI, § 50(g). Say the plaintiff, the defendant's proffered interpretation would directly contradict section 50(g). To harmonize the provisions, the referenced exception in section 50(a)(6)(K) must be construed to refer only to refinancings that are not also home equity loans. The defendant counters that the court should focus only on the exact words to be found in section 50(a)(4), which uses the word "refinancing" without qualification, and insists that the plain meaning of this section confirms that the 2004 Bank of America loan (which was both a "refinancing" and a home equity loan) falls within the exception.

### The Interpretation of Section 50(a)(6)(K)

The Texas Legislature drafted the then proposed language of section 50 for submission to the voters of this state after carefully considering the dramatic alteration such a provision would make to Texas' historical commitment to the preservation of the homestead against all but a narrow range of liens for more than 150 years. *See* Charles C. Boettcher, *Taking Texas Home Equity for a Walk, but Keeping it on a Short Leash!*, 30 TEX. TECH. L.REV. 197, 211 (1999); *Ritter v. Citizens*

*Bank (In re Ritter)*, No. 07-61071, 2009 Bankr. LEXIS 954, at *8 (Bankr. E.D.Tex. Mar. 26, 2009). (taking note of "the long and distinguished history of the homestead exemption under Texas law an dits stated purpose of providing a home and a means of support for a debtor and his family ..."). Its provisions should accordingly be construed strictly against the lenders whose liens constitute a significant incursion on that long-honored protection. *Duncan v. Ferguson-McKinney Dry Goods Co.*, 150 F. 269, 271 (5th Cir. 907 ("It has been the policy of the state of Texas in its Constitution and legislation, as construed by the decisions of its Supreme Court, to favor by liberal interpretations the exemptions in favor of debtors. These decisions, construing the state Constitution and statutes, are as binding on this court as the Constitution and statutes themselves"); *see also In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995) ("In Texas, homestead rights are sacrosanct: 'We must give liberal construction to the constitutional and statutory provisions that protect homestead exemptions.' Indeed, we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly – or even knowingly be powerless to avoid it – 'assist a dishonest debtor in wrongfully defeating his creditor'"); . We keep these principles in mind as we set out to interpret the home equity provisions here – provisions which by their nature are an exception to the homestead.

In construing these provisions, we apply accepted principles of statutory construction, these constitutional provisions having been carefully drafted by the Texas Legislature prior to their submission for approval by the voters of the state of Texas. *See Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) (when interpreting the state's constitution, the Texas Supreme Court relies heavily on its literal text, seeking to give effect to its plain language, strives to give constitutional provisions the effect their makers intended, and avoids a construction that renders any provision meaningless or inoperative); *see also Hanson v. Jordan*, 145 Tex. 320, 198 S.W.2d 262,

263 (1946) (construction is preferred that does not render any provision meaningless or inoperative); *Doody v. Ameriquest Mortg. Co.,* 242 F.3d 286, 289 (5th Cir. 2001). In addition, when construing constitutional amendments, a court is permitted to consider legislative history. *Stringer*, *supra*, citing TEX. GOV'T CODE § 311.023(3).

The natural interpretation of the exceptions spelled out in subsections (a)(1) - (a)(5) and (a)(8) is that they must not, themselves, also be liens securing a home equity loan. The exceptions are *other liens* that may be permitted to exist against the homestead *in addition to* the home equity lien. If another lien on the property already secures another home equity loan, it cannot (and should not) be saved by the fact that it also happens to secure another loan that does fit within the exception. Construing the provisions of the Texas Constitution on the subject of homestead exemptions liberally in favor of the debtor, as we must, and further recalling the obligation not to read one part of the Constitution in a manner that would render another provision meaningless and inoperative, the sensible reading of the "refinancing" exception referenced in section 50(a)(6)(K) is that it refers only to refinancings that are not also home equity loans.[3] Otherwise, it would be possible for a borrower to end up with *two* home equity loans on her property at the same time, in direct derogation of section 50(g) of the Constitution. The point is that there may be only one home equity lien at a time. *See* TEX. CONST., Art. XVI, § 50(g).[4]

---

[3] It is worth noting that section 50(a)(4) of the Texas Constitution was *not* added by the amendment to the Constitution that authorized home equity loans in Texas. It was added (though in unnumbered text) by an amendment to the Constitution in 1995, which inserted an expansion of the permitted exceptions to encumbrances on the homestead " ... the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses ..." *See* 1995 amendments to the Texas Constitution, proposed by Acts 1995, 74th Leg., S.J.R. No. 46, *reprinted at* 3 Vernon's Texas Constitution, Art. 16, § 50, Historical Notes (West Supp. 2010). Of course, in 1995, there was no such thing as a permitted home equity lien against a Texas homestead, so the legislature that drafted that text could not have had that possibility in mind when they drafted this language.

[4] Perhaps the easiest way to see the error of USAA's argument is to notice that the home equity loan made by Bank of America *was itself* valid because it fit within the exception to (a)(4). By USAA's argument, once such a loan is obtained, a debtor would then be able to obtain multiple subsequent home equity loans by the simple device of refinancing the

Plaintiff also correctly notes that it has been held that when agencies are delegated the power to interpret enactments, their interpretations are entitled to great deference by the courts. *See, e.g., Alpine Industries, Inc. v. Strayhorn & Abbott*, 2004 Tex. App. LEXIS 6242, at *7-8 (Tex.App. – Austin, July 15, 2004). That is certainly true with respect to the Texas Finance Commission and the Credit Union Commission of Texas, both of which have been expressly authorized to issue interpretations of the home equity provisions of the Texas Constitution. *See* TEX. FIN. CODE, §§ 11.308 & 15.413; *see also Texas Bankers Ass'n v. ACORN*, 303 S.W.3d 404, 408-09 (Tex.App. – Austin 2010). Those interpretations are contained within the Texas Administrative Code, at Chapter 153. Rule 153.10 provides that "an owner may have only one equity loan at a time, regardless of the aggregate total outstanding debt against the homestead." USAA's interpretation would invite lenders to wrap and re-wrap existing home equity lines, all attempting to gaining shelter under the "exception" in section 50(a)(4), and in the process directly contradicting Rule 153.10, as well as section 50(g) of the Texas Constitution. It is an interpretation that thus must be rejected.

Plaintiff also notes that, regardless this court's interpretation of the applicable law, the facts of this case make USAA's position untenable. The plaintiff's evidence is that the prior loan from the Bank of America was for the purpose of obtaining a home equity loan. That evidence is not rebutted. What is more, its status as a Texas Home Equity Loan was evident in the public record at the time USAA made its loan. USAA was thus on at least constructive (if not actual) notice of the existence of a pre-existing and still outstanding home equity loan to these same debtors on this same property. USAA suggests that the court should look at the "primary purpose" of that loan based on how much of the loan was used to refinance a prior purchase money loan, but offers no support for

---

previously refinanced loan! That, it seems, is clearly at odds with the express statement in the Texas Constitution that, to channel the movie *Highlander*, "there can be only one."

how such an interpretation would square with the plain language of the Texas Constitution. For that reason alone, the argument must be rejected. The point of the prohibition is not one of intention, or percentage. It is one of fact. The constitutional provision offers no sliding scale of the sort suggested by USAA. It simply says that there can be only one home equity lien on a homestead at any given time. TEX. CONST. Art. XVI, § 50(g). In this case, there already was such a lien – in favor of Bank of America. No further home equity loans could validly be placed on the property.[5] For this reason, USAA's home equity lien is not a valid lien or encumbrance against this homestead. *See* TEX. CONST., Art. XVI, § 50(c).

## Conclusion

For the reasons stated, summary judgment is granted to plaintiff. A separate judgment will be submitted consistent with this decision.

# # #

---

[5] Once again, the possibility of abuse were USAA's position accepted is easy to plot: lenders would *always* refinance existing loans, and simply make sure that the home equity piece was less than the amount of the outstanding purchase money remaining due. That way, additional loans could be added on periodically, by simply "refinancing" the entire package again. That may be a good idea from the point of view of a lender's business plan. Section 50 of Article XVI of the Texas Constitution was not drafted as it was, however, with the primary purpose of maximizing lenders' business plans. It was drafted to make such loans possible while still protecting Texas' longstanding public policy favoring the protection of the homestead. *See Ritter, supra*, 2009 Bankr. LEXIS 954, at *8.